IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| Ruben Franchini and Rosa M. Esparza | ) |
| | ) Case No. 13-19382 |
| Debtors/ Debtors-in-Possession. | ) |
| | ) Honorable Eugene R. Wedoff |
| | ) |

**AGREED FINAL ORDER AUTHORIZING
USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**

Upon Hearing For Entry Of Agreed Order Authorizing Use of Cash Collateral (the "Cash Collateral Motion") filed by Ruben Franchini and Rosa M. Esparza ("Franchini" or "Esparza", individually or the "Debtors" collectively "Debtors"), and Monty SPV, LLC ("Secured Party") pursuant to §§ 361, 363, 503 and 507 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 4001-2, seeking authority for the Debtors to use Cash Collateral (as defined herein) of the Secured Party.

**THE DEBTOR AND BANK HEREBY STIPULATE AS FOLLOWS:**

A.  Petition Date.  On May 7, 2013 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the bankruptcy case of the Debtors shall be referred to as, the "Case").

B.  Debtors in Possession.  The Debtors have continued in the management and possession of their business and properties as Debtors-in-Possession pursuant to Bankruptcy Code §§ 1107 and 1108. No Official Committee of Unsecured Creditors has not been appointed in this Case as of the date hereof.

2391026.1

C. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. <u>Prepetition ClaimsAgainst the Debtors</u>. Subject to the provisions of paragraph 6 below, the Debtors acknowledge, agree and stipulate that:

(i) Pursuant to a Promissory Note, Assignment of Rents, Business Loan Agreement and Mortgage dated as of August 1, 2005 entered into by the Debtors and Harris N.A. (all of which having been assigned to the Secured Party on June 19, 2013, otherwise modified from time to time, the "Loan Agreement" and together with all other security agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, (the "2005 Financing Documents"), Harris N.A. made loans and advances to, and/or provided other financial accommodations to or for the benefit of the Debtors from time to time;

(ii) Pursuant to a Promissory Note and Business Loan Agreement dated July 20, 2008 and a Mortgage, and Assignment of Rents dated as of June 19, 2007 entered into by the Debtors and Harris N.A. (all of which having been assigned to the Secured Party on June 19, 2013, otherwise modified from time to time, the "Loan Agreement" and together with all other security agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, (the "325 Financing Documents"), Harris N.A. made loans and advances to, and/or provided other financial accommodations to or for the benefit of the Debtors from time to time;

(iii) Pursuant to a Promissory Note and Business Loan Agreement dated July 20, 2008 and a Mortgage, and Assignment of Rents dated as of June 19, 2007 entered into by the Debtors and Harris N.A. (all of which having been assigned to the Secured Party on June 19,

2013, otherwise modified from time to time, the "Loan Agreement" and together with all other security agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "2008 Financing Documents"), Harris N.A. made loans and advances to, and/or provided other financial accommodations to or for the benefit of the Debtors from time to time;

(iv)    Pursuant to a Promissory Note and Business Loan Agreement dated July 20, 2008, and a Mortgage and Assignment of Rents dated June 19, 2007 entered into by the Debtors and Harris N.A. (all of which having been assigned to the Secured Party on June 19, 2013, otherwise modified from time to time, the "Loan Agreement" and together with all other security agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, (the "708 Mortgage Financing Documents"), Harris N.A. made loans and advances to, and/or provided other financial accommodations to or for the benefit of the Debtors from time to time;

(v)    Pursuant to a Promissory Note, Business Loan Agreement, Mortgage, and Assignment of Rents dated as of December 6, 2008 entered into by the Debtors and Harris N.A. (all of which having been assigned to the Secured Party on June 19, 2013, otherwise modified from time to time, the "Loan Agreement" and together with all other security agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "2006 Financing Documents"), Harris N.A. made loans and advances to, and/or provided other financial accommodations to or for the benefit of the Debtors from time to time;

(vi)    Pursuant to a Commercial Security Agreement dated as of August 1, 2005 entered into by the Debtors and Harris N.A. (said Security Agreement and the UCC-1 associated therewith having been assigned to the Secured Party on June 19, 2013, ("the Security Agreement") granting secured interest in all of the personal property of the Debtors ("Security Agreement")

3

2391026.1

(vii)    The Debtors were, as of the Petition Date, indebted to the Secured Party on account of the Indebtedness (as defined below), which is comprised of amounts due in connection with all of above Financing Documents and unpaid fees, costs and expenses in an unliquidated amount. For purposes of this Order, the term "Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the 2005 Financing Documents, 325 Financing Documents, 2008 Financing Documents, 708 Financing Documents and the 2006 Financing Documents hereinafter collectively referred to as "the Financing Documents", and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the Financing Documents and this Order), which as of July 31, 2013, such total Indebtedness was $1,534,009.10, plus per diem interest in the amount of $809.00, accruing subsequent to July 31, 2013, plus attorneys' fees and costs.

(viii)    Pursuant to the Financing Documents, the Debtor granted to and/or for the benefit of Harris Bank first priority and continuing Mortgages, pledges, liens and security interests (the "Prepetition Liens") to secure the Indebtedness, on and in certain real property of the Debtor commonly known as 712 Collins, 720-726 Collins, Joliet, Illinois, 325 Pleasant Street, Joliet, Illinois, 327 Pleasant Street, Joliet, Illinois, 708 Vine Street, Joliet, Illinois and 350 Ward Avenue, Joliet, Illinois, including proceeds and rents and profits thereof and all personal property of the Debtors pursuant to the Security Agreement, including all assets and personal property used by Silver Coin Wash, a non-incorporated business which is owned and operated by the Debtors (the "Prepetition Collateral");

(ix)    As of the Petition Date and immediately prior to giving effect to this Order, (a) the Financing Documents and Security Agreement are valid and binding agreements and obligations of the Debtors and are enforceable against the Debtors in accordance with their terms, (b) the Prepetition Liens (i) constitute valid, binding, enforceable and perfected first priority security

interests and liens, but only to the extent such permitted liens are valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (c) the Indebtedness constitutes the legal, valid and binding obligations of the Debtor, and the Indebtedness, and any amounts paid at any time to the Secured Party on account thereof or with respect thereto, are not subject to (i) any objection, offset, defense or counterclaim of any kind or nature, or (ii) avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and

(x)     The Debtor has waived, discharged and released any right it may have to challenge any of the security for the Indebtedness.

(xi)    Copies of the Financing Documents are attached to the Secured Party's Proof of Claim filed in this case with the Clerk of the Court for the Northern District of Illinois.

**Based upon the foregoing, the Cash Collateral Motion, and the record before the Court with respect to the Cash Collateral Motion, and good and sufficient cause appearing therefor,**

**IT IS HEREBY ORDERED that:**

1.      <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Order, the Debtors may use Cash Collateral to pay actual, ordinary, and necessary expenses set forth in the budget attached hereto as Exhibit "A," or as such budget may be modified in writing with the prior written consent of, which shall not be unreasonably withheld (the "<u>Budget</u>").  In no event shall the Debtors use Cash Collateral to pay any items in excess of 115% of the amount set forth in the Budget, either by line item or in the aggregate, measured on a bi-weekly basis.

2. The Secured Party is hereby granted, retroactive to the Petition Date and without the necessity of any additional documentation or filings, valid, enforceable, non-avoidable, and fully perfected liens (the "Adequate Protection Liens") of the same validity, priority and extent as the liens they are replacing, subject only to any valid and enforceable preexisting liens, upon any property that the Debtor acquires after the Petition Date including, without limitation, any rents received from the Debtor's prepetition collateral and postpetition operations, but excluding any avoidance actions under chapter 5 of the Bankruptcy Code.

3. <u>Adequate Protection Superpriority Claims</u>. Pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code and to the extent of any Deficiency, the Court grants to the Secured Party an allowed superpriority administrative expense claim in each of the Cases (the "<u>Adequate Protection Superpriority Claim</u>"). The Adequate Protection Superpriority Claim shall be junior to all secured claims and to the quarterly fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930; or the fees and expenses of the Clerk of this Court.

4. <u>Adequate Protection Payments</u>.

A. The Debtor shall pay to the Bank on the 1st day of each month hereafter the sum of $8,347.85.

B. The Bank's application of the above monthly payments to interest, is without prejudice to the rights of any party to seek reallocation of the payments.

C. The Debtor shall deposit monthly the sum of $1,807.38 in an escrow account representing the total post petition estimated monthly real estate taxes for 712 Collins, 720-726 Collins, 325 Pleasant Street, 327 Pleasant Street, 708 Vine Street and 350 Ward Avenue, all of Joliet, Illinois

D.    For additional adequate protection the Debtor shall within ten (10) business days following the Debtor's receipt of a written summary invoice (with a copy delivered to Debtor's counsel, the U.S. Trustee and any counsel to an official committee of unsecured creditors (if appointed) (the "Committee")), the Debtor shall pay the Secured Party's reasonable fees and expenses for legal counsel rendered postpetition that relate to the Indebtedness and the Secured Party's interests in the Debtor's Case; <u>provided,</u> that none of such fees and expenses, as adequate protection payments hereunder, shall be subject to approval by the Court or to the United States Trustee Guidelines, and the Secured Party shall not be required to file with respect thereto any interim or final fee application with the Court; <u>provided, further</u>, that if an objection to a professional's invoice is made within ten (10) business days following the Debtor's Counsel's receipt of such invoice, or if the total fees to date exceed $10,000, the Debtor shall only be required to pay the undisputed amount or an amount up to $10,000 and the Court shall have jurisdiction to determine any dispute concerning such invoice or payment of additional fees.

5.    The Bank's receipt and application of the payment of post-petition attorneys fees by the Debtor, is without prejudice to the rights of any party to seek reallocation of the payments. Furthermore, the Debtor's payment of post-petition attorneys fees only indicate the Debtor's consent to the reasonableness of the fees and expenses and is without prejudice to the rights of any other party, including the Trustee appointed in Chapter 7, to contest the reasonableness of the attorneys fees and expenses.

6.    <u>The Debtors' Obligations</u>.    The Debtors shall maintain insurance of the kind covering the Prepetition Collateral including, without limitation, fire, hazard, comprehensive, and public liability, as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the businesses in which the Debtors are engaged.

7. Notwithstanding anything herein to the contrary, including the Debtor's stipulations and releases herein solely as they relate to the Secured Party, (a) the Debtor shall have until 28 days from the date of this Order, (b) the Committee, if appointed, shall have until the later of (i) 60 days from the date of appointment of the Committee and (ii) 75 days from the entry of this Order, and (c) any other non-debtor party in interest (including, without limitation, any receiver, administrator or trustee appointed or elected in the Case or any successor case or in any jurisdiction) shall have until 75 days from the entry of this Order (the applicable date, (the "Investigation, Termination Dates")) to investigate the validity, perfection, and enforceability of the Prepetition Liens or to assert any other claims or causes of action against the Secured Party. If the Debtor, Committee (if appointed), or any non-debtor party in interest, determines that there may be a challenge by the Investigation Termination Dates, the Debtor, Committee (if appointed) or other non-debtor party in interest shall have only until the applicable Investigation Termination Date to commence an adversary proceeding or contested matter (each, a "Challenge"), as required by the applicable Bankruptcy Rules, on behalf of the Debtor's estate setting forth the basis of any such Challenge. In no event shall the filing of any such Challenge affect any of the rights, privileges, powers or remedies of the Secured Party under this Order or the Financing Documents pending a ruling on such Challenge. If no Challenge is filed on or before the appropriate Investigation Termination Date (or such other later date as extended by the written consent of the Debtor and the Secured Party), then the agreements, acknowledgements, releases and stipulations contained in paragraph D of this Order shall be irrevocably binding on the estates, the Committee (if appointed) and all other parties in interest. If the Debtor initiates a Challenge, the Secured Party may withdraw its consent to this Agreed Order which shall terminate upon 7 days notice to the Debtor.

8. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Order according to its terms.

9. <u>Automatic Stay</u>. The Automatic Stay is hereby vacated and modified to the extent necessary to permit (a) the Debtors and the Bank to commit all acts and take all actions necessary to implement this Order, and (b) all acts, actions, and transfers contemplated herein.

10. <u>Status Hearing</u>. This matter is set for a status hearing on NOVEMBER 6, 2013 at 10:00 A.M.

_____
Hon. Eugene R. Wedoff
United States Bankruptcy Judge
1 OCT 2013

AGREED:

| For Ruben Franchini and Rosa M. Esparza | For the Secured Party |
|---|---|
| /s/ Chris D Rouskey | /s/L. Judson Todhunter |
| Chris D/ Rouskey (ARDC 03123595) | Daniel S. Rubin (ARDC 6293669) |
| Rouskey And Baldacci | L. Judson Todhunter (ARDC 2840510) |
| 151 Springfield Avenue | Howard & Howard Attorneys PLLC |
| Joliet, Illinois 60435 | 200 S. Michigan Avenue, #1100 |
| Telephone (815)741-2118 | Chicago, IL 60604 |
| | Telephone (312) 372-4000 |

2391026.1

9

# EXHIBIT "A"

## BUDGET

2391026.1

BUDGET

| | |
|---|---:|
| Payroll.................................... | $ 8,300.00 |
| Adequate Protection Payment................. | $ 8,347.85 |
| Real Estate Taxes........................... | $ 1,820.00 |
| Insurances.................................. | $ 1,200.00 |
| Utilities (Gas, Electric, Water)............ | $ 6,000.00 |
| Utilities (Telephone, Cable, Internet)...... | $ 500.00 |
| Garbage Pickup.............................. | $ 85.99 |
| Vehicle Maintenance......................... | $ 200.00 |
| Gasoline.................................... | $ 360.00 |
| Office Supplies............................. | $ 80.00 |
| Property Maintenance........................ | $ 500.00 |
| Merchandise for Sale........................ | $ 2,900.00 |
| Sales Tax................................... | $ 300.00 |
| Miscellaneous Expenses...................... | $ 300.00 |
| U.S. Trustee Quarterly Fee.................. | $ 325.00 |
| | $31,218.84 |